UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80826-MIDDLEBROOKS

AMANDA ZACHMAN, *an individual*,

    Plaintiff,

v.

MARKEL AMERICAN INSURANCE COMPANY
*and* HOUSTON SPECIALTY INSURANCE COMPANY,

    Defendants.
_____/

## ORDER DENYING SECOND AMENDED MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court upon Plaintiff's Second Verified Amended Expedited Motion for Preliminary Injunction, filed August 12, 2025. (DE 18). Plaintiff initiated this action on June 30, 2025, with the filing of a complaint seeking damages and declaratory relief regarding various insurance policies purportedly signed by Defendants MV Realty PBC, LLC, and MV Realty Holdings, LLC, two entities for which Plaintiff serves as an officer (collectively "MV Realty"). (DE 1). Plaintiff alleges she is entitled to benefits under the policies in dispute by virtue of her role as an officer of MV Realty and that Defendants have failed to defend or reimburse her in several legal actions in which she has been named in her capacity as an officer. (*Id.*). On July 30, 2025, Plaintiff filed an Amended Motion for Preliminary Injunction. (DE 9). I denied that Motion on both substantive and procedural grounds. (DE 13). On substantive grounds, I questioned whether a preliminary injunction would be appropriate in this context, as it may not be the proper mechanism for the relief Plaintiff seeks. (DE 13 at 2).

She now returns with a Second Amended Motion for Preliminary Injunction. For the reasons explained below, I will deny this Motion too. Upon review of the record, Plaintiff does not

meet the substantially high burden required to impose this extraordinary remedy. Specifically, I find that Plaintiff has not shown a clear and substantial likelihood of success, which is required upon a request for a mandatory injunction.

### I. Background

Amanda Zachman, as an officer of MV Realty, has been the subject of ongoing legal proceedings across the country initiated by various Attorneys General. This includes investigations and lawsuits in states including, but not limited to, New Jersey, Missouri, North Carolina, Minnesota, Georgia, Florida, Indiana, California, and South Carolina (the "Various State Actions"). (DE 27 at 7; DE 28 at 6). At the heart of these investigations is the Homeowner Benefit Program and the Program's contracts, Homeowner Benefit Agreements ("HBAs"). Through these HBAs, MV Realty would offer homeowners "a loan alternative" ranging from $300 to $5,000 dollars in cash. (DE 27 at 7). In return, MV Realty would become the exclusive real estate listing broker for the property for a term lasting forty years. If the property transferred title without enlisting MV Realty, then MV Realty would collect a penalty worth 3% of the property's value. Once an HBA was executed, MV Realty recorded a lien against the property. The Florida Attorney General described the implications of MV Realty's practice of recording liens against homeowners as "prevent[ing] many consumers from unlocking the equity in their homes through refinancing, reverse mortgages, home equity lines of credit, and other financial tools." (*Id.*).

In light of these lawsuits, Plaintiff attempts to avail herself of liability insurance policies from each of the Defendants, Markel American Insurance Company ("Markel") and Houston Specialty Insurance Company ("HSIC"). The Markel For Profit Management Liability Policy (hereinafter "Markel Policy") requires Markel to "pay on behalf of the Insured Persons all Loss"

for a "Wrongful Act taking place before or during the Policy Period." (DE 1 ¶ 17; DE 1-1 at 32).

The Markel Policy defines "Loss" as:

> the total amount the Insured becomes legally obligated to pay on account of covered Claims made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, Claim Expenses….

(DE 1-1 at 35). In turn, the Markel Policy defines "Claim Expenses" as:

> reasonable and necessary fees, costs and expenses incurred by the Insureds, if duty to defend coverage has not been purchased for the applicable Coverage Part.

(*Id*. at 16). Therefore, the Markel Policy would ordinarily provide coverage for costs incurred by the Plaintiff in defending suits that allege that Plaintiff committed a "Wrongful Act" and would additionally pay for a range of financial obligations following closing of the lawsuit.

Likewise, the HSIC Miscellaneous Errors and Omissions Liability Insurance Policy (hereinafter "HSIC Policy") states that the insurance company will "pay Claim Expenses and Damages an Insured becomes legally obligated to pay as a result" of a lawsuit "alleging a Wrongful Act that … was first disclosed to the Insured during the Policy Period." (DE 1-2 at 17). The HSIC Policy defines the term "Damages," in relevant part, as:

> any compensatory damages (including pre and post-judgment interest) awarded against an Insured in a civil judgment… or settlement negotiated by the Company.

(DE 1-2 at 19). The HSIC Policy similarly defines the term "Claim Expenses" to mean:

> reasonable and necessary fees, costs and expenses (including fees for attorneys and experts) incurred by the Company or by the Insured… in the defense, investigation, adjustment, appeal, or settlement of a Claim….

(*Id*. at 18). Therefore, the HSIC Policy would ordinarily provide coverage for costs incurred by the Plaintiff in defending suits that allege a "Wrongful Act" and would additionally pay for a range of financial obligations following closing of a lawsuit.

Plaintiff alleges she is entitled to benefits under these policies and that Defendants have failed to defend or reimburse her in the Various State Actions. (DE 1). The instant Motion requests a preliminary injunction mandating that Defendants provide coverage for her legal defense in the underlying actions while the present insurance coverage dispute plays out.

Defendant Markel generally argues that the underlying lawsuits "make crystal clear that the entire basis of the lawsuits filed by the various states is that MV Realty operated an ongoing consumer fraud and engaged in unfair and deceptive business practices" thereby placing all of Plaintiff's claims outside the scope of the Markel Policy. (DE 27 at 14). Additionally, Defendant HSIC refutes Plaintiff's coverage arguments by arguing that Plaintiff has failed to demonstrate that the activities over which she is being sued qualify as "Professional Services," which is required in order to trigger coverage under the HSIC Policy. HSIC also argues that a variety of other exclusions apply. (DE 28 at 7).

**II. Discussion**

At the outset, I find the need to clarify the relevant standard, as the Parties disagree whether the relief requested by the Plaintiff constitutes a mandatory or prohibitive injunction. "A preliminary injunction is meant to keep the status quo for a merits decision." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022); *see also Robinson v. Attorney General*, 957 F.3d 1171, 1179 (11th Cir. 2020). *See generally* 11A Charles Alan Wright, Arthur Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (3d ed. 2013 & 2019 supp.) (preservation of the status quo through a preliminary injunction "is unobjectionable when used simply to articulate the

desire to prevent [the] defendant from changing the existing situation to [the] plaintiff's irreparable detriment"). As I noted in my first order denying Plaintiff's Amended Motion for Preliminary Injunction, the relief requested through the preliminary injunction does not seek to prevent alteration of the status quo. (DE 13 at 2). Instead, granting a preliminary injunction would force Defendants to pay out the benefits of their contract before the scope and duties of those contracts have been determined, akin to an early adjudication of the merits of this case. (DE 13 at 2).

Two additional considerations supply further reason to characterize Plaintiff's motion as seeking a mandatory injunction. First, neither Markel nor HSIC ever paid for any of Plaintiff's defense costs (DE 28 at 10). This suggests that the status quo between the Parties was a state of non-payment. And what those Parties were obligated to do under the insurance policies is "precisely what the parties could have disputed then and still dispute now." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 357 (2d Cir. 2024). Second, in a related but separate case now pending before me, I denied Plaintiff David Manchester's request for similar preliminary injunctive relief. Manchester was also an officer of MV Reality, faced with defending lawsuits similar to those filed against Plaintiff. In that instance, even though the defendant insurer had already paid Manchester $1,000,000 under the policy to fund his legal defense costs, the existing status quo there was still one of non-payment because the insurer had ceased payment under the policy. *Manchester v. Endurance Assurance Corp.*, 9:25-cv-80761-DMM (S.D. Fla. Aug. 13, 2025). Nothing has changed since then, and Plaintiff's claim is even more attenuated than Manchester's. As a result, Plaintiff's request is best classified as a mandatory injunction, requiring her to meet the higher burden. *See Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) (holding that a "mandatory [preliminary] injunction" affirmatively ordering a party to act, "should not be granted except in rare instances in which the

facts and law are clearly in favor of the moving party"); *Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1474 (11th Cir. 1985) ("Only in rare instances is the issuance of a mandatory preliminary injunction proper.").

Plaintiff has not met this heightened burden. To obtain a preliminary injunction, Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be adverse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citation omitted). A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal quotations omitted). Importantly, failure to meet even one of the elements of the test dooms the request for a preliminary injunction. *Wreal LLC, v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2018).

Here, I need only discuss the first prong, as I conclude that Plaintiff fails to show that she is substantially likely to succeed on the merits.

### A. The Markel Policy

Plaintiff's central argument concerning the Markel Policy is that Markel improperly invoked one of the operative endorsements, the "Consumer Protection Exclusion," as a basis to deny coverage and refuse to defend Plaintiff against all of the lawsuits brought against her. (DE 18 at 7). The Consumer Protection Exclusion states in relevant part:

> The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**: Based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated**

> **Wrongful Acts** that violate(s) or is (are) alleged to violate any federal or state consumer protection statute, law rule, ordinance or regulation…

(DE 18 at 7). Specifically, she contends that "[n]umerous claims [counts] across almost all jurisdictions do not assert a violation of any federal, state or local consumer protection" law. (*Id.* at 8). Instead, several jurisdictions bring counts that, according to Plaintiff, are "independent and standalone [counts] separate and apart from any consumer protection related [count]" such as unlawful lending related conduct and unlawful title recording. (*Id.*). Because there are some counts that allege conduct purportedly outside the scope of the Consumer Protection Exclusion, Plaintiff suggests that the insurance companies must be preliminarily enjoined to pay to defend her against not only those counts, but in fact the entire suit. (*Id.* at 11) (highlighting Eleventh Circuit precedent suggesting that the duty to defend applies to the entire action).

I find that this argument misunderstands the definition of the term "Wrongful Act." The Markel Policy defined the term "Wrongful Act," in relevant part, as:

> Any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such.

(DE 27 at 5). The "Act" may include an alleged misrepresentation that violates a range of laws, including non-consumer protection laws. But just because the Act also forms the basis of a separate claim, not itself sounding in consumer protection, does not mean that the Consumer Protection Exclusion cannot apply. In other words, if a non-consumer protection claim arises out of the action itself (e.g., a misrepresentation), and that same action also violates or is alleged to violate a consumer protection law, then it, too, is presumably barred from coverage. Plaintiff's reading – which centers solely on the count and not the underlying action – would likely render the Exclusion meaningless where the same misrepresentation fits under a consumer protection law and a separate law. Plaintiff suggests that "UDAP 'arising out of' breadth does not swallow stand-alone allegation

7

[*sic*]" and that a "meaningful causal nexus" is still required. Plaintiff offers no authorities to support this assertion. As a result, I find that Plaintiff is unable to demonstrate a substantial likelihood of success on the merits as it applies to the Markel Policy.

### B. The HSIC Policy

Plaintiff refutes a host of exclusions in the HSIC Policy. And importantly, to prevail, she would need to establish a substantial likelihood that *none* of them apply. I need not review all of them now. I will, however, discuss some of them here in order to illustrate why Plaintiff has not met her burden of establishing that she is entitled to preliminary injunctive relief.

First, Plaintiff argues that the HSIC Policy creates a duty to defend where the Wrongful Acts involve performance of Real Estate and Property Management services. Given that some allegations brought by Attorneys General do concern real estate services, Zachman contends that it is covered under the Policy. The HSIC Miscellaneous Errors and Omissions Liability Insurance Policy provides coverage for a lawsuit:

> alleging a Wrongful Act that first occurred after the Retroactive Date, and was first disclosed to the Insured during the Policy Period.

(DE 1-2 at 17). The Policy, in turn, defines a "Wrongful Act" as:

> any actual or alleged breach of duty, negligent act, error, omission or Personal Injury offense committed by an Insured solely in the performance of, or failure to perform, Professional Services.

(*Id*. at 21). Professional Services is defined as Real Estate and Property Management Services:

> when performed by the Insured in the ordinary conduct of the Insured's profession for or on behalf of a customer or client for a fee or other monetary compensation.

(*Id*. at 10; 20). Taking these definitions into consideration, Plaintiff characterizes HSIC's defense as saying that the lawsuits at issue are not solely in the performance of Real Estate and Property Management Services, before pointing to various counts by Attorneys General that touch on real

estate practices. (DE 18 at 10; 12). Plaintiff suggests an inconsistency between the Markel Policy and the HSIC Policy, stating that:

> Markel contends that its policy . . . precludes coverage because of [*sic*] the Various State Actions focus on or involve allegations of professional real estate brokerage services which Markel contends fall under its exclusion set forth in the Professional Liability Endorsement. Conversely, HSIC has asserted that the claims made . . . do not assert claims for conduct solely in the performance of or a failure to perform Real Estate and Property Management Services."

(DE 18 at 11, 12).

To obtain a preliminary injunction, Plaintiff must be substantially likely to prevail on the merits. On these briefings, it remains unclear to the Court what the theories underlying the relevant policy terms are. Although Plaintiff has illustrated an apparent inconsistency, she has not definitively shown a substantial likelihood that she would prevail based upon the arguments she is advancing. Because the requirements of a mandatory preliminary injunction require the facts and law to be clearly in favor of the moving party, I do not find that Plaintiff has met her burden. I note that Plaintiff has repeatedly turned to the *Hartford* case for the proposition that "[a]ny doubts regarding the duty to defend must be resolved in favor of the insured." *Hartford Acc. And Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (2006) (citing *Jones v. Florida Ins. Guar. Ass'n*, 908 So.2d 435, 443 (Fla. 2005)). *Hartford* demands that lower courts review the facts of the underlying complaint, *i.e.*, the Various State Actions, and determine whether they "fairly and potentially" bring the suit within coverage. *See Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So.2d 579, 579-80 (Fla. 3d DCA 1993) ("The duty is determined solely by the allegations against the insured…."). *Hartford* and other cases implicating this principle arose in a different posture. They involved appellate review of a district court decision on summary judgment (or at a later stage), not a preliminary injunction, and the courts in those cases benefitted from a much more comprehensive factual record. Further, it is entirely conceivable at this juncture that the facts of the underlying

complaint *do not* bring the underlying Various State Actions within coverage of either the Markel or HSIC Policies. As a result, this doctrine does not thread the needle in favor of Plaintiff at this point in the litigation. Even if Plaintiff could prove successful at this stage, other exclusions stand as a significant obstacle to her ability to ultimately prevail in this case, and consequently to her ability to obtain a preliminary injunction now.

Other examples of policy exclusions that appear to pose significant obstacles for Plaintiff are: "Exclusion A" of the HSIC Policy;[1] "Exclusion N," which precludes coverage relating to the unsolicited dissemination of communications;[2] and Section VI.B of the Policy, which precludes coverage if the policy application contains misrepresentations "made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Policy" (DE 1-2 at 25).[3] My preliminary

---

[1] Exclusion A precludes coverage relating to any claim "arising out of, based upon, relating to, or otherwise attributable to false advertising, misrepresentation in advertising … unfair or deceptive business practices, misappropriation of advertising ideas or style of doing business." (DE 1-2 at 21). Plaintiff cites to allegations sounding in real estate practices, where the elements of which do not invoke deception; yet the underlying premise of these allegations involves deception. (DE 33 at 6). The Florida statute, for example, prohibits real estate brokers from placing upon the "public records of any county… [any] writing which encumber, any real property if the same is known … to be false, void …  maliciously or for the purpose of collecting a commission, or to coerce the payment of money to the broker or sales associate or other person, or for any unlawful purpose." Fla. Stat. § 475.42(1)(i). The actions concerned in the statute clearly implicate the broader deceptive scheme that Plaintiff allegedly undertook.

[2] Plaintiff's argument here misunderstands the definition of the term "Claim." (DE 33 at 8). The preclusion set forth in the Policy is not limited to any specific count or allegation. Instead, the Policy precludes "any Claim." (*Id*. at 21). "Claim" is defined more broadly as, in part, a "civil proceeding commenced by the service of a complaint or similar pleading." (*Id*. at 18).

[3] Defendant HSIC avers that on the Policy application on July 14, 2022, MV Realty responded "No" to the following question: "Is the Applicant aware of any fact, circumstance, situation, error or omission that can reasonably be expected to result in a claim against the Applicant?" (DE 28-8 at 2). The question of whether Plaintiff was aware of the possibility of a claim is a central part of this case. Defendant will bear the burden in this litigation of showing that Plaintiff Zachman (or any other officer of MV Realty) was aware of any fact, circumstance, or situation that would materially affect either the acceptance of the risk or the hazard assumed by the insurance company. (DE 1-1 at 73; DE 1-2 at 25). At this stage, however, the burden remains with Plaintiff to

assessment of the possibility applicability of these exclusions provides further compelling support for my finding that Plaintiff does not demonstrate a substantial likelihood of success on the merits.

### III. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Second Amended Motion for Preliminary Injunction (DE 18) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 7th day of October, 2025.

Donald M. Middlebrooks
United States District Judge

cc.

Counsel of Record

---

demonstrate that she is substantially likely to prevail on this issue. Her defense that "HSIC has not shown … that Zachman personally 'knew' of any supposed misstatement…." does not do anything to negate HSIC's argument that MV Realty's officers might have been aware of the misrepresentation made. (DE 33 at 9).

11