IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 2025-CV-80826-DMM

AMANDA ZACHMAN, and individual,
and
MV REALTY PBC, LLC, a Florida limited liability company,

    Plaintiff,

v.

MARKEL AMERICAN INSURANCE COMPANY, a foreign corporation,
and
HOUSTON SPECIALTY INSURANCE COMPANY, a foreign corporation,

    Defendants.

## SECOND AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiffs, Amanda Zachman ("Zachman") and MV Realty PBC, LLC ("MV") (collectively, "Plaintiffs") hereby sue Defendants, Markel American Insurance Company ("Markel") and Houston Specialty Insurance Company ("HSIC") (collectively, "Defendants") for damages and declaratory relief and allege as follows[1]:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for damages and for declaratory relief pursuant to 28 U.S.C. § 2201.

2. At all times material hereto, Zachman, was and is a citizen of Florida who resides in Palm Beach County, Florida.

---

[1] Defendants do not object to the filing of this Second Amended Complaint for Damages and Declaratory Relief.

3. At all times material hereto, MV was and is a Florida limited liability company having a current address of 1451 W. Cypress Creek Rd. Suite 300, Ft. Lauderdale, FL 33309.

4. At all times material hereto, Defendant Markel was and is a citizen of Virginia as it is a Virginia corporation with its principal place of business in Glen Allen, Virginia.

5. At all times material hereto, Defendant HSIC was and is a citizen of Texas as it is a Texas corporation with its principal place of business in Houston, Texas.

6. The amount in controversy exceeds the sum of $75,000.00 exclusive of interest, attorney's fees and costs.

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties.

8. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) in that the insurance policy in dispute in this action was issued to MV in Broward County, Florida, and a substantial part of the events giving rise to the claim occurred in the district.

9. This federal judicial district is the place of issuance under the Policy, and Florida law governs Defendants' obligations to Zachman and MV.

## GENERAL ALLEGATIONS

10. Zachman is an officer of MV.

11. Zachman has been an officer of MV since at least August of 2014.

12. MV is a wholly owned subsidiary of parent company MV Realty Holdings, LLC ("MVRH").

13. Zachman has also held a real estate license and has acted in the capacity as a Chief Sales Officer for MV and its subsidiaries.

## MARKEL AMERICAN INSURANCE COMPANY

14. Markel issued to MVRH, a Directors and Officers and Company Liability and Employment Practices and Third-Party Discrimination Liability policy. The initial policy number was MKLM2MML000716. The 2022/2023 Policy Number was MKLM2MML000716 (the "Markel Policy"). A copy of the operative 2022/2023 Markel Policy is attached hereto as **Exhibit "A."**

15. The Markel Policy has afforded continuous insurance coverage since the policy inception on or about August 14, 2021 to the present day.

16. Coverage under the Markel Policy includes directors and officers and company liability coverage, as well as employment practices and third party discrimination liability.

17. Coverage under the Markel Policy also expressly includes a duty to defend.

18. The Contract provides, in relevant part: "[T]he Insurer shall pay on behalf of the Insured Persons all Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against Insured Persons, individually or otherwise, during the Policy Period or any applicable Extended Reporting Period, if purchased, for a Wrongful Act taking place before or during the Policy Period." Markel Policy, Directors and Officers and Company Liability Coverage Part, Section I(A).

19. The Markel Policy defines a Loss as follows: "Loss means the total amount the Insured becomes legally obligated to pay on account of covered Claims made against them,

including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, Claim Expenses and civil money penalties assessed against an Insured: (i) pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B); or (ii) for a violation of any federal, state, local or foreign law if such violation is not knowing or willful." Markel Policy, Section III – Definitions, I.

20. The Markel Policy defines Claim Expenses as follows: "Claim Expenses means reasonable and necessary fees, costs and expenses incurred by:

   1. The Insurer, if duty to defend coverage has been purchased for the applicable Coverage Part;

   2. The Insureds, if duty to defend coverage has not been purchased for the applicable Coverage Part;"

Markel Policy, General Terms and Conditions, Section II(C)

21. The Markel Policy provides for a duty to defend the Insureds. Markel Policy, Item 5, Coverage Schedule, A Directors and Officers and Company Liability, Coverage Part Duty to Defend: Yes.

Markel Policy, Item 5, Coverage Schedule

22. Insured Person is defined as:

"1. Any natural person who was, now is or shall during the Policy Period become a duly elected or appointed director, trustee, governor, Manager, officer, advisory director, or member of a duly constituted committee or board of the Company or their functional equivalent;

> 2. Any natural person not described in Item 1. above who was, now is or shall during the Policy Period become an Employee of the Company; and
>
> 3. Any natural person described in Item 1. above while serving in an Outside Position;"
>
> Markel Policy, Section III – Definitions, O.

23. Zachman and MV are insureds under the Markel Policy.

24. In her capacity as an officer for MV, Zachman and/or MV have been named in multiple legal actions throughout the United States by State law enforcement authorities including, but not limited to North Carolina (Wake County Superior Court Division, Case No. 23CV006408-910), Indiana (USDC SD Indiana Case No. 1:23-cv-01578-MPB-MG), Georgia (Fulton County Superior Court), New Jersey (Essex County Superior Court Case No. 2023151677)(New Jersey Real Estate Commission Docket Number REC-E-23-006), California (Los Angeles County Superior Court Case No. 23STCCV30464), Massachusetts (Suffolk County Superior Court Case No. 2284CV02823-BLS2), Idaho (AA County District Court Case No. CV01-25-09511), Illinois (Cook County Circuit Court, Chancery Division Case No. 2024CH03278), Missouri (St. Louis County Circuit Court Cause No. 24SL-CC01124), Florida (Hillsborough County Circuit Case No. 22-CA-009958), Pennsylvania (Philadelphia County Court of Common Please, Civil Division-Equity Case No. 221201288) ("Various State Actions").

25. The Markel Policy includes coverage for the parent company, MV Realty Holdings, LLC, as well as subsidiaries, including MV. Markel Policy, Section II, D.

26. Markel has been provided notice of the Various State Actions along with request for coverage under the Markel Policy, including Markel's duty to defend.

27. Markel has wrongfully refused to afford any coverage under the Markel Policy for said actions, including providing a defense to Zachman and MV, leading Zachman and MV to incur damages and expose her to future damages and significant legal and financial liability exposure associated with same.

28. Markel has failed and refused to provide any benefits under the Markel Policy.

29. Markel contends, inter alia, that there are various bases in support of denying any and all coverage under the Markel Policy.

30. One such basis for denial proclaimed by Markel is the Markel Policy's Consumer Protection Exclusion Endorsement.

31. The Markel Policy's Consumer Protection Exclusion Endorsement applies to certain Coverage Parts which are each individually identified by a checkbox and preceding language which reads: "This endorsement modifies all insurance provided under the following for which a check mark (X) appears:" Markel Policy, Consumer Protection Exclusion.

32. The Markel Policy's Consumer Protection Exclusion Endorsement maintains the box unchecked for Directors and Officers and Organization Liability Coverage Part such that it reads as follows: "DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART". *Id.*

33. Markel contends that it was a mistake that the box corresponding to Directors and Officers and Organization Liability Coverage Part was left unchecked.

34. Markel's prior policy issued for the 2021 through 2022 period contains the same coverage for Directors and Officers and Organization Liability Coverage Part.

35. The omission of a checkmark on the section of Markel Policy's Consumer Protection Exclusion Endorsement relative to Directors and Officers and Organization Liability Coverage Part was not a mutual mistake.

36. The omission of a checkmark on the section of Markel's 2021-2022 Policy's Consumer Protection Exclusion Endorsement relative to Directors and Officers and Organization Liability Coverage Part was not a mutual mistake.

37. Despite this admitted mistake, Markel contends that the Consumer Protect Exclusion Endorsement still applies and forms a legitimate basis for denial of coverage.

38. Markel improperly relies on the Consumer Protection Endorsement as a basis to deny a defense for **all** claims brought against Zachman and MV, even though the Various State Actions include claims that indisputably fall outside of the Consumer Protection Endorsement. Numerous claims across almost all jurisdictions **do not** assert a violation of any federal, state or local consumer protection statute, law, rule, ordinance or regulation. Rather, multiple jurisdictions assert independent and standalone claims separate and apart from any consumer protection related claim. By way of example, multiple states assert allegations specific to: (i) unlawful lending related conduct, (ii) unlawful title recording, and (iii) unlawful prohibited contractual terms, all of which are not asserted under any consumer protection law.

39. By way of example, multiple states assert non-consumer protection claims in the context of lending:

40. **Florida** allegations of "improper recordation / cloud on title" and an invalid "covenant running with the land," both of which turn on property/lien doctrines, not advertising or solicitation.
41. **Georgia** (Fulton County) challenges "recording formalities (attestation & unofficial witness)" and asserts the "memorandum functions as lien/cloud on title," claims that test compliance with deed-recording statutes, not consumer fraud.

42. **North Carolina** asserts violations for "recorded memoranda cloud title," "lis pendens without title claim," "unfair debt collection" under N.C. Gen. Stat. §§ 75-50 et seq., and "usurious lending" under N.C. Gen. Stat. §§ 24-1 et seq.; § 24-1.1(c), all of which invoke distinct statutory regimes—property, litigation privilege, debt collection, and interest-rate caps—that are not tethered to UDAP or telemarketing.
43. **New Jersey** asserts violations of the Residential Mortgage Lending Act (licensing, disguised-mortgage characterization, secondary-mortgage language, and NMLS identifier requirements), together with civil and criminal usury statutes, each of which are regulatory or rate-setting offenses adjudicated on strict compliance standards, not on proof of consumer deception.
44. **Pennsylvania** pleads violations of the Fictitious Names Act and recording mortgages in the name of a non-existent entity—registration and validity issues wholly apart from consumer-fraud law.
45. **Missouri** alleges unlawful "filing [of] liens related to contracts," a property-law challenge to encumbrance and recordation. (Florida, Georgia, North Carolina, New Jersey, Pennsylvania and Missouri hereinafter referred to as "Various State Actions").

46. Markel relies heavily on its Consumer Protection Exclusion in taking the position that no duty to defend is triggered as to **any claim at all** regardless of whether such claim is an excluded consumer protection claim or a non-excluded claim unrelated to consumer protection. Moreover, Markel ignores the non-excluded claims and does not squarely address them in its coverage correspondence. See attached Ex. H. Nevertheless, unable to address how the consistent presence of an array of non-excluded claims justify their refusal to honor their indisputable duty to defend, Markel refuses to provide the defense for its insureds, including Zachman. This position is wholly inconsistent with Florida law and the express terms of the Markel Policy. The coverage Markel refuses to provide was explicitly provided for in the Markel Policy and paid for by the insureds.

47.     Markel also contends that the Contract's Broad Professional Liability Endorsement precludes coverage. The Markel Policy's Broad Professional Liability exclusion provides, in relevant part:

"The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of, or in any way involving any actual or

8

alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering or failure to render any professional services."

Ex. A, p. 59.

48. Markel contends that the allegations in the Various State Actions focus on or involve real estate brokerage to the extent that such claims fall under the Professional Liability Endorsement and, therefore, denied.

49. Critically, none of the claims identified hereinabove implicate rendering or a failure to render a professional service. Rather, the above referenced allegations in the Various State Actions all above fall outside of each state's statutory framework regulating professional real estate brokerage services. These referenced allegations do not implicate any rendering or failure to render a professional service. Thus, Markel's reliance on its Broad Professional Liability exclusion is also misplaced and unsupportable by the plain language of its Policy.

50. Markel's professional-services exclusion is limited in that it expressly carves back coverage for "any Insured Person against whom a Claim is made alleging such Insured Person failed to supervise the rendering of or failure to render any professional services." The State AG pleadings against Zachman do exactly that: they frame her alleged liability in terms of management, direction, and oversight of MV's real estate brokerage operations and personnel—not in performing brokerage services herself. For example, the Various Sate Actions contain the following allegations[2]:

---

[2] The Markel D&O Declarations identify this policy as a **renewal** ("**RENEWAL OF POLICY: MKLM2MML000579**") for **8/28/2022–8/28/2023**, and the **Pending or Prior Dates** endorsement references **08/14/2020**–both confirming consecutive Markel years. Thus, even if any allegation were deemed "first-made" before **August 14, 2022**, it would fall under **Markel's 2021–2022 policy (See Exhibit "A" attached hereto)**, making timing a **year-to-year allocation/limits** issue–not a bar to Markel's **present duty to defend**.

51. **Idaho** pleads that Zachman "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of MV Realty," and that through this control she "had knowledge of the acts and practices constituting the violations alleged herein."
52. **Pennsylvania** alleges that Zachman "directed, supervised, controlled, approved, formulated, authorized, ratified, benefited from, and/or otherwise participated in the unlawful acts and practices of MV Realty PBC, LLC."
53. **New Jersey** alleges that Zachman "directly supervised the activity of Reiner, the broker of record of MV Realty of New Jersey" while directing hiring of licensees.
54. **Illinois** likewise pleads that Zachman "manages MVR's real estate and legal departments, oversees all real estate transactions, oversees MVR's principal brokers",
55. **Florida** alleges she "was the manager and lead broker of MV Realty and directly participated in, managed, operated, controlled, and had the ability to control the operations of MV Realty and its subsidiaries."

56. Markel offers other excuses for failing to provide any and all benefits to Ms. Zachman or MV under the Markel Policy.

57. Markel's excuses for failing to provide benefits to which Plaintiff's are entitled are without merit.

58. Markel has accepted all premium payments despite providing no coverage or benefits to any insured under the Markel Policy or any prior or subsequent policy.

59. Plaintiffs have attempted to correspond with Markel who has failed or refused to communicate with her or her counsel.

## HOUSTON SPECIALITY INSURANCE COMPANY

60. HSIC issued to MV and its subsidiaries a Miscellaneous Professional Liability Insurance Policy. The 2022/2023 Policy Number was MEO-HS-0001883-01 (the "HSIC Policy"). A copy of the operative 2022/2023 HSIC Policy is attached hereto as Exhibit "B."

61. The HSIC Policy has afforded continuous insurance coverage since the policy inception on or about August 14, 2021.

62. Coverage under the HSIC Policy includes coverage for miscellaneous professional liability, including coverage for claim expenses and Damages as an Insured becomes obligated to pay them.

63. The HSIC Policy defines a Claim as follows:

"1. a written demand first received by an Insured for Damages or non-monetary relief;

2. civil proceeding commenced by the service of a complaint or similar pleading;

3. an arbitration proceeding commenced by receipt of a demand for arbitration,"

HSIC Policy, p. 2 of 12.

64. The HSIC Policy defines a Claim Expense as follows: "Claim Expenses means reasonable and necessary fees, costs and expenses (including fees for attorneys and experts) incurred by the Company or by the Insured, with the Company's consent, in the defense, investigation, adjustment, appeal or settlement of a Claim, including the cost of an appeal bond. The Company does not have any obligation to post collateral for or otherwise secure such an appeal bond if the amount of the bond (when combined with previously paid fees, costs and expenses) exceeds the applicable Limits of Insurance."

*Id.*

65. The HSIC Policy defines an Individual Insured as follows:

1. any past or present partner, officer, director or employee of the Named Insured (and in the event of their death or incapacity, any estate or legal representative) performing Professional Services on behalf of the Named Insured;

   2. any independent contractor, temporary worker, or leased employee performing Professional Services

HSIC Policy, p. 3 of 12.

66. Plaintiff's are insureds under the HSIC Policy.

67. The HSIC Policy defines a Named Insured as "the person or entity identified on the Declarations and its subsidiaries." HSIC Policy, Section II, L.

68. HSIC has failed or refused to provide Plaintiffs and other Insureds the benefits to which they are entitled under the HSIC Policy.

69. HSIC has reimbursed MV in the amount of $50,000 for a disciplinary sublimit benefit.

70. By way of example, multiple states assert non-consumer protection claims in the context of lending:

   i. New Jersey asserts express allegations of violations of its New Jersey Real Estate License Act governing New Jersey Real Estate Agents. See Ex. E, ¶129-132. ¶149,
   ii. North Carolina asserts allegations related to a failure to provide services and assistance necessary to perform as a licensee. See Ex. G, ¶86.
   iii. Florida specifically asserts allegations of violations of its business and licensing statutes relating to real estate brokers, including § 475.25(1)(r) relating to limitations on listing contract terms. See Ex. D, ¶22, 26, 58.

71. HSIC has been provided notice of the Various State Actions and a request for coverage under the HSIC Policy, including HSIC's duty to defend.

72. HSIC has wrongfully refused to afford any coverage the HSIC Policy for the Various State Actions, including coverage due to Zachman and MV, leading them to incur damages and expose them to future damages and significant legal and financial exposure associated with same.

73. HSIC has consistently refused to provide Ms. Zachman, MV or any other insured with benefits due under the HSIC Policy.

74. HSIC contends, inter alia, that there are various bases in support of denying coverage under the HSIC Policy.

75. One such basis for denial proclaimed by HSIC is that the Various State Matters do not assert claims for conduct solely in the performance of or a failure to perform Real Estate and Property Management Services, as defined by the HSIC Policy.

76. HSIC's excuses for failing to provide benefits to which Ms. Zachman or MV are entitled, including without limitation a duty to defend, are without merit.

77. Put simply, HSIC contends, inter alia, that the claims asserted in the Various State Actions do not qualify as professional services while Markel contends, inter alia, that the claims asserted in the Various State Actions do qualify as professional services.

## COUNT I-DECLARATORY RELIEF AS TO MARKEL

78. Zachman and MV incorporate the allegations provided in ¶s 1 through 4, 6 through 10, and 1-59 as if fully stated herein.

79. A declaration is required for purposes of determining a question of an actual controversy between Zachman, MV, and Markel. Specifically, a declaration is required to determine whether Markel has a duty to defend and/or reimburse Zachman or MV for attorney fees and costs associated with defending the Various State Actions, as well as indemnify them, as required pursuant to the applicable insurance policy.

80. To date, Markel has failed and refused to do same for MV and Zachman.

81. The Various State Actions constitute claims giving rise to coverage under the subject insurance policies.

82. At all times material hereto, Zachman and MV were insured under the Director and Officers and Organization Liability Coverage Part under the Markel Policy.

83. The allegations in the Various State Actions allege Wrongful Acts giving rise to coverage under the Markel Policy.

84. The Various State Actions allege facts which fairly and potentially bring Zachman and MV within policy coverage under the Markel Policy.

85. Accordingly, Markel has and continues to defend Zachman and MV in the Various State Actions and/or reimburse Zachman and MV for attorney fees and costs associated with the defense of same.

86. There is a bona fide, actual, present, and practical need for this declaration.

87. This declaration deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

88. Some immunity, power, privilege, or right of the complaining parties are dependent upon the facts or the applicable to the facts.

89. There is some person or persons who have, or reasonably may have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

90. The antagonistic and adverse parties are before this Court by proper process.

91. The relief sought is not merely for giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, AMANDA ZACHMAN and MV Realty PBC, LLC respectfully request this Honorable Court enter judgment against Defendants Markel, determining and granting the following:

a) That pursuant to the terms of the Markel Policy, Markel was and is obligated to provide a defense to Zachman and MV in the Various State Actions.

b) That pursuant to Florida Statutes, §627.428, Zachman and MV are entitled to recover her attorneys' fees and costs from Markel incurred in this action; and

c) All other relief as this Court deems just and proper.

## COUNT II-DECLARATORY RELIEF AS TO HSIC

92. Zachman and MV incorporate the allegations provided in ¶s 1-3, 5-9, 10-13, 24 and 60-77 as if fully stated herein.

93. A declaration is required for purposes of determining a question of an actual controversy between Zachman, MV, and HSIC. Specifically, a declaration is required to determine whether HSIC has a duty to defend and/or reimburse Zachman or MV for attorney fees and costs associated with defending the Various Actions, as well as indemnify them, as required pursuant to the applicable insurance policy.

94. To date, HSIC has failed and refused to do the same for MV and Ms. Zachman, with the exception of the $50,000 sublimit reimbursement payment.

95. The Various State Actions constitute claims giving rise to coverage under the subject insurance policies.

96. At all times material hereto, Zachman and MV were insured under the Miscellaneous Professional Liability coverage under the HSIC Policy.

97. The allegations in the Various State Actions allege Wrongful Acts giving rise to coverage under the HSIC Policy.

98. The Various State Actions allege facts which fairly and potentially bring Zachman and MV within policy coverage under the HSIC Policy.

99. Accordingly, HSIC has and will continue to have a duty to defend Zachman and MV in the Various State Actions and/or reimburse Zachman and MV for attorney fees and costs associated with the defense of same.

100. There is a bona fide, actual, present, and practical need for this declaration.

101. This declaration deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

102. Some immunity, power, privilege, or right of the complaining parties are dependent upon the facts or the applicable to the facts.

103. There is some person or persons who have, or reasonably may have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

104. The antagonistic and adverse parties are before this Court by proper process.

105. The relief sought is not merely for giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff, AMANDA ZACHMAN and MV Realty PBC, LLC respectfully request this Honorable Court enter judgment against Defendant HSIC, determining and granting the following:

    a) That pursuant to the terms of the HSIC Policy, HSCI was and is obligated to provide a defense to Zachman and MV in the Various State Actions.

    b) That pursuant to Florida Statutes, §627.428, Zachman and MV are entitled to recover her attorneys' fees and costs from HSIC incurred in this action; and

    c) All other relief as this Court deems just and proper.

<b><u>COUNT III-BREACH OF CONTRACT AS TO MARKEL</u></b>

106. Zachman and MV incorporate the allegations provided ¶s 1 through 4, 6 through 10, and 1-59 as if fully stated herein.

107. Zachman and MV were and are insured under the Markel Policy, which was/is in full force in effect at all times material to this Complaint.

108. Zachman and MV have either complied with all conditions precedent to filing this lawsuit and they are entitled to recover under the Markel Policy or any such conditions have been waived.

109. Markel's refusal to acknowledge and provide a defense and coverage for the loss constitutes a breach of contract.

110. The aforementioned conduct constitutes a direct and willful breach of the Markel Policy as to Markel.

111. Zachman and MV have been damaged as a result of Markel's breach of the contract and will continue to be damaged into the foreseeable future.

112. As a result of Markel's aforementioned breach of contract it has become necessary that Zachman and MV retain the services of the undersigned counsel. As such, Zachman and MV are obligated to pay a reasonable fee for undersigned counsel's services in bringing this action, plus necessary costs.

113. Zachman and MV are entitled to recover attorney fees and costs pursuant to §627.428.

## **COUNT IV-BREACH OF CONTRACT AS TO HSIC**

114. Zachman and MV incorporate the allegations provided ¶s 1-3, 5-9, 10-13, 24 and 60-77 as if fully stated herein.

115. Zachman and MV were and are insured under the HSIC Policy, which was/is in full force in effect at all times material to this Complaint.

116. Zachman and MV have either complied with all conditions precedent to filing this lawsuit and they are entitled to recover under the HSIC Policy or any such conditions have been waived.

117. HSIC's refusal to acknowledge and provide a defense and coverage for the loss constitutes a breach of contract.

118. The aforementioned conduct constitutes a direct and willful breach of the HSIC Policy as to HSIC.

119. Zachman and MV have been damaged as a result of HSIC's breach of contract and will continue to be damaged into the foreseeable future.

120. As a result of HSIC's aforementioned breach of contract it has become necessary that Zachman and MV to retain the services of the undersigned counsel. As such, Zachman and MV are obligated to pay a reasonable fee for undersigned counsel's services in bringing this action, plus necessary costs.

121. Zachman and MV are entitled to recover attorney fees and costs pursuant to §627.428.

WHEREFORE, Zachman respectfully prays for a judgment against Markel and HSIC for damages, attorneys fees and costs, and for any other relief that this Court deems just and proper.

## **JURY DEMAND**

Zachman and MV demand a Trial by Jury on all issues so triable.

Dated: October 8, 2025.

                                          Respectfully submitted,

                                          */s/ Jeffrey M. Glotzer*
                                          Jeffrey M. Glotzer, Bar #184489
                                          Frascona, Joiner, Goodman & Greenstein, P.C.
                                          4750 Table Mesa Drive
                                          Boulder, CO 80305
                                          303-494-3000
                                          jeff@frascona.com
                                          *Attorney for Plaintiff, Amanda Zachman*