**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:25-CV-80826-DMM

AMANDA ZACHMAN, an individual, and MV REALTY PBC, LLC, a Florida limited liability company,

Plaintiffs,

v.

MARKEL AMERICAN INSURANCE COMPANY, a foreign corporation, and HOUSTON SPECIALTY INSURANCE COMPANY, a foreign corporation,

Defendants.

---

MARKEL AMERICAN INSURANCE COMPANY, et al.,

Defendants/Counter-Plaintiffs,

v.

AMANDA ZACHMAN, MV REALTY PBC, LLC, MV REALTY HOLDINGS, LLC, ANTONY MITCHELL, DAVID MANCHESTER, DAVID REINER, STEVEN SCOTT, and DARRYL COOK,

Counter-Defendants.

---

**DEFENDANT MARKEL AMERICAN INSURANCE COMPANY'S**
**STATEMENT OF MATERIAL FACTS**

Defendant/Counter-Plaintiff, MARKEL AMERICAN INSURANCE COMPANY ("MAIC"), files this Statement of Material Facts pursuant to Local Rule 56.1:[1]

**The MAIC Policy**

1. MAIC issued a For Profit Management Liability Policy bearing policy number MKLM2MML000716 to MV Realty Holdings, LLC for the policy period of August 28, 2022 to August 28, 2023 (the "Policy"). ECF No. 50-5, p. 9.

2. The Declarations Page of the Policy states, in part, as follows:

> **Claims Made Coverage:** The coverage afforded by this policy only applies to **Claims** that are first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased.

ECF No. 50-5, p. 9.

3. The Insuring Agreements for the Directors and Officers and Company Liability Coverage Part ("D&O and Company Liability Coverage Part") of the Policy state, in part:

> **DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART**
>
> **SECTION I – INSURING AGREEMENTS**
>
> **A. INSURED PERSON LIABILITY COVERAGE**
>
> The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.
>
> **B. COMPANY REIMBURSEMENT COVERAGE**
>
> The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or any

[1] Amanda Zachman ("Zachman"), MV Realty PBC, LLC ("MV PBC"), MV Realty Holdings, LLC ("MV Holdings"), Antony Mitchell ("Mitchell"), David Manchester ("Manchester"), David Reiner, Steven Scott, and Darryl Cook will be collectively referred to as "MV Realty."

applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

**C. COMPANY LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** becomes legally obligated to pay on account of any **Claim** first made against the **Company** during the **Policy Period** or any applicable **Extended Reporting Period**, if purchased, for a **Wrongful Act** taking place before or during the **Policy Period**.

….

ECF No. 50-5, p. 32.

4. For purposes of the D&O and Company Liability Coverage Part, the Policy defines "Claim" as follows:

**Claim** means:

1. A written demand against an Insured for monetary damages or non-monetary relief, including a written demand that an Insured toll or waive a statute of limitations, commenced by such Insured's receipt of such written demand;
2. A civil proceeding against an Insured commenced by the service of a complaint or similar pleading upon such Insured;
3. A criminal proceeding against an Insured commenced by such Insured's receipt of an indictment, information or similar document;
4. An administrative or regulatory proceeding against an Insured commenced by such Insured's receipt of a notice of charges or similar document;
5. A civil, criminal, administrative or regulatory investigation of an Insured Person commenced by the service upon or other receipt by such Insured Person of a target letter or other written notice from the investigating authority identifying by name such Insured Person as an individual against whom a proceeding may be commenced;

….

ECF No. 50-5, p. 34.

5. The Policy defines "Single Claim" as follows:

**D. SINGLE CLAIM**

All Claims which arise out of the same **Wrongful Act** or **Interrelated Wrongful Acts** of the **Insured** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any Insured, regardless of whether such date is before or during the **Policy Period** or any **Extended Reporting Period**.

ECF No. 50-5, p. 22.

6. The Policy defines "Interrelated Wrongful Acts" to mean "all **Wrongful Acts**, including all **Wrongful Employment Practices**, that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." ECF No. 50-5, p. 17.

7. The Policy's definition of "Loss" states, in pertinent part, that Loss does not include "[m]atters uninsurable under the law pursuant to which this policy is construed." ECF No. 50-5, pp. 35, 52.

8. Exclusion I. to the Policy provides that the Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured:**

> Based upon, arising out of or in any way involving any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation.

ECF No. 50-5, pp. 36-37.

9. Exclusion J., as modified by the Policy's "Policy Changes Endorsement Description", provides that the Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured:**

> Based upon, arising out of or in any way involving an **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if:
> **1.** A final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** gained any such profit, remuneration or advantage; or
>
> **2.** Such **Insured** agrees to repay to the **Company** such profit, remuneration or financial advantage;

ECF No. 50-5, pp. 36, 52.

10. The Policy endorsement titled "Exclusion – Broad Professional Liability" provides, in part: "[t]he Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated

to defend, any **Claim** based upon, arising out of, or in any way involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering or failure to render any professional services." ECF No. 50-5, p. 59

11. The Policy endorsement titled "Consumer Protection Exclusion" provides, in part:

> The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:
>
> > Based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts** that violate(s) or is(are) alleged to violate any federal or state consumer protection statute, law, rule, ordinance or regulation including, but not limited to ….

ECF No. 50-5, p. 61.

## The Underlying Claims

### I. The Florida Attorney General Action

12. On November 29, 2022, the Office of the Attorney General for the State of Florida ("Florida AG") filed a Complaint for Injunctive Relief against MV PBC, Zachman, Mitchell, and Manchester in the Circuit Court of the Thirteenth Judicial Circuit in Hillsborough County, Florida, Case No. 2022-CA-9958 (the "Florida Action"). ECF No. 50-1.

13. MV Realty reported the Florida Action to MAIC via a Notice of Claim dated December 1, 2022. *See* Notice of Claim, a copy of which is attached hereto as **Exhibit "A"**.

14. In the Florida Action, the Florida AG alleged that the "[d]efendants engage in a complex and deceptive scheme that attempts to skirt existing Florida law with the goal of swindling consumers out of their home equity." ECF No. 50-1, ¶ 1.

15. The Florida AG summarized the scheme as follows:

> Defendants offer consumers $300-$5,000 cash as a "loan alternative" but without requiring consumers to take out a loan. In exchange, consumers enter into a misleading and confusing Homeowner Benefit Program ("HBP") which includes

> signing a contract, the "Homeowner Benefit Agreement" ("HBA"), that requires consumers to use MV Realty as their exclusive real estate listing broker for a period of 40 years. During the course of the 40-year term of the HBP, if the consumer lists the property for sale but does not use MV Realty as its listing broker, or if the home is foreclosed upon, heirs try to sell the home, or consumers simply wish to cancel the deal, Defendants will seek to be paid 3% of the property's value, a value that, pursuant to the terms of the HBA, is determined by Defendants.

ECF No. 50-1, ¶ 2.

16. The Florida AG further alleged that the defendants would record a memorandum of the HBA in the public records, which created a lien on the consumer's title. ECF No. 50-1, ¶ 3.

17. According to the Florida AG, this practice of recording liens prevented consumers "from unlocking the equity in their homes through refinancing, reverse mortgages, home equity lines of credit, and other financial tools." ECF No. 50-1, ¶ 3.

18. The Florida AG further alleged that "[d]efendants use deceptive and abusive telemarketing and advertising practices to advertise the HBP and accompanying HBA as a loan alternative. Consumers are told that there is no obligation to return the cash, and they owe MV Realty nothing in return unless and until they sell their home…." ECF No. 50-1, ¶ 4.

19. The relief sought by the Florida AG against the defendants in the Florida Action consisted of temporary and permanent injunctive relief; restitution to consumers; disgorgement of ill-gotten gains; and civil penalties. ECF No. 50-1, pp. 41-42.

20. On September 24, 2024, the Circuit Court in the Florida Action entered an Order on Cross-Motions for Summary Judgement in the Florida AG's favor as to liability and injunctive relief. ECF No. 50-3.

21. The Court's Order began with a description of the HBP and HBA:

> In October of 2018, MV Realty began marketing and implementing its Homeowner Benefit Program enticing homeowners with an upfront cash payment in return for an agreement to use MV Realty as their real estate agent should the homeowner sell their home in the future. MV Realty locked thousands of Florida homeowners into

> Homeowner Benefit Agreements ("HBAs"). Between 2018 and November 2022, Defendants executed approximately 9,303 HBAs with Florida consumers. Nationally, in the same period, Defendants and their subsidiaries originated 34,000 HBAs. The HBAs had a term of forty (40) years and provided that if a homeowner breached the HBA, MV Realty would be entitled to collect three percent (3%) of the market value of the property (the "Early Termination Fee"). The HBA also gave MV Realty the right to record in the public records a "Memorandum of Homeowner Benefit Agreement" (the "Memoranda") which MV Realty promptly recorded with county registrars in every instance without exception. The HBA also included a provision whereby consumers conceded the HBA constituted a covenant running with the land binding successors in interest in title.

ECF No. 50-3, p. 4 at ¶ 7 (citations omitted).

22. The Court held that the HBA violated FDUTPA "substantively unconscionable" for three reasons: (1) the term of the agreement was 40 years; (2) consumers have no choice but to arbitrate claims; and (3) consumers must agree the contract runs with the land and expressly binds subsequent owners. ECF No. 50-3, p. 5 at ¶ 11.

23. The Court also expressly held that Zachman, Mitchell, and Manchester "directly participated in the wrongful acts or practices" and, therefore, they were individually liable for violating FDUTPA. ECF No. 50-3, pp.8-10 at ¶ 19.

24. The Court found that Zachman's "participation in designing and implementing the HBA, and her knowledge of the issues raised by complaining consumers, establishes Zachman's liability for MV Realty's FDUTPA violations." ECF No. 50-3, pp. 9-10 at ¶ 19.c.

25. The Court found that, as MV Realty's CEO since 2018, Mitchell "knew what information and features of the Homeowner Benefit Program were being conveyed to consumers, and which were not." ECF No. 50-3, p. 8 at ¶ 19.a. The Circuit Court explained "the evidence [was] clear that Mitchell knew that MV Realty presented a very different picture to consumers." ECF No. 50-3, pp. 8-9 at ¶ 19.a. Accordingly, the Court found Mitchell individually liable for violating FDUTPA. ECF No. 50-3, p. 9 at ¶ 19.a.

26. The Court also found that as MV Realty's COO since 2018, "Manchester had deep knowledge of and participation in the key aspects of the marketing and implementation of the Homeowner Benefit Program, and further had the authority to control the how and what information was communicated to consumers in connection with their solicitation to enter into the HBA." ECF No. 50-3, p. 9 at ¶ 19.b. The Court concluded that Manchester was also individually liable. ECF No. 50-3, p. 9 at ¶ 19.b.

27. The Court ruled:

> [The Florida Attorney General] is entitled to partial summary judgment as a matter of law that MV Realty's actions and practices surrounding the Homeowner Benefit Program—and the HBAs and Memoranda themselves—as set forth in Counts I and II of Plaintiff's Complaint with respect to liability and injunctive relief, constitute unlawful practices in violation of § 501.204 of FDUPTA. Further, the record evidence establishes that Plaintiff is entitled to judgment as a matter of law as to Count III, with respect to the issue of liability and injunctive relief, against the Individual Defendants Anthony Mitchell, David Manchester, and Amanda Zachman for violations of FDUPTA.

ECF No. 50-3, p. 10 at ¶ 20 (citations omitted).

28. On February 12, 2025, the Court in the Florida Action entered a Partial Summary Judgment on Injunctive Relief (the "Partial Summary Judgment"). *See* Partial Summary Judgment, a copy of which is attached hereto as **Exhibit "B"**. The Partial Summary Judgment states that, "[t]he Court hereby fully adopts all findings of fact and conclusions of law set forth in the [September 24, 2024] Order on Cross-Motions for Summary Judgment …." Ex. B, p. 2 at ¶ 3.

29. In the Partial Summary Judgment, the Court ruled that:

> The HBAs and associated Memoranda are both procedurally and substantively unconscionable and thereby unenforceable. The Court further determined that Defendants' recording of the HBA Memoranda in the public record is unconscionable. Each of the named Individual Defendants was directly involved in the planning, engineering, implementation, execution and other key aspects of the Homeowner Benefit Program, HBA and Memoranda, which the Court has separately found to be violative of FDUTPA as a matter of law. All three Individual

> Defendants also had the ability to control the respective conduct and practices that violate FDUTPA within their spheres of responsibility.

Ex. B, pp. 2-3 at ¶ 4.

30. On December 17, 2025, separate Consent Final Judgments in the Florida Action were entered into by MV PBC (a copy of which is attached hereto as **Exhibit "C"**) and as to Zachman, Mitchell, and Manchester (a copy of which is attached hereto as **Exhibit "D"**).

31. Each of the Consent Final Judgments specifically provide that:

> This Consent Judgment does not affect, change or amend the terms of this Court's prior Orders, including but not limited to, this Court's Order on Cross-Motions for Summary Judgment dated September 24, 2024, and this Court's Partial Summary Judgment on Injunctive Relief Order dated February 12, 2025. All findings, decisions and injunctive relief entered by this Court expressly survive the conclusion of the litigation and are incorporated into this Consent Judgment as if fully restated herein.

Ex. C and D, p. 2 at ¶ 1.3.

32. The relief awarded in the Consent Final Judgments consisted of injunctive relief against all defendants; disgorgement against MV PBC; civil penalties against all defendants (with payment suspended as to the individual defendants); and attorney's fees and costs against MV PBC. Ex. C and D at ¶¶ 3.1-4.6.

## II. Additional State Attorney General Actions

33. Several other state attorneys general filed lawsuits against MV Realty (and certain of its officers) based on the HBP and the HBA challenging some or all of the same aspects as the challenged in the Florida Action. ECF No. 50 at ¶¶ 47-48.

## III. Related Claims First Made Prior to Inception of the MAIC Policy

34. When MV Realty tendered its Notice of Claim regarding the Florida Action (Ex. A), it did not disclose that there were multiple Claims (as defined by the Policy) that had been made prior to the inception of the Policy, which arose out of the same "Interrelated Wrongful Acts"

(i.e. Claims that arose out of, and had a common nexus with, the same aspects of the HBP and HBA). *See* Summary of Pre-Policy Inception "Claims", attached hereto as **Exhibit "E"**.

35. A "Claim Free Warranty Statement" dated August 26, 2022, signed by Mitchell as CEO forms a part of the Policy [ECF No. 50-5, p. 73] and stated:

> Re: MV Realty PBC, LLC
> MV Realty Holdings, LLC
>
> Dear Insurer:
>
> With respect to the coverage part limit of liability stated below:
>
> Directors and Officers Liability limits excess of $5,000,000
> Employment Practices Liability limits excess of $1,000,000
>
> No person or entity proposed for coverage is aware of any fact, circumstance or situation which he or she has reason to suppose might give rise to a future claim that would fall within the scope of any of the proposed coverage part limit of liability stated above, except: None or
> Am ______________________________________________
> ______________________________________________
> ______________________________________________
>
> Without prejudice to any other rights and remedies of the Insurer, the Applicant understands and agrees that if any such fact, circumstance, or situation exists, whether or not disclosed above, any claim or action arising from any such fact, circumstance, or situation is excluded from coverage under the proposed policy, if issued by the Insurer.

36. Scott testified that he is not aware of any notice of claim or potential claim being provided to MAIC prior to the first notice of the Florida Action in November or December 2022. *See* Scott Dep. Tr. dated June 22, 2026, a copy of which is attached hereto as **Exhibit "F"**, at 24:8-20.

37. Multiple Claims were made against MV Realty involving the HBP and HBA transactions prior to the inception of the Policy. Ex. E.

38. Prior to filing the Florida Action on November 29, 2022, the Florida AG commenced at least two formal investigations via subpoenas issued to MV PBC (and as defined in the subpoenas any of its affiliates, officers, directors, etc.). On May 11, 2021, fifteen (15) months prior to inception of the Policy, the Florida AG issued a Consumer Protection Subpoena Duces Tecum titled "In The Investigation of" MV PBC (the "2021 Florida Subpoena"), a copy of which is attached hereto as **Exhibit "G"**.

39. The 2021 Florida Subpoena states, *inter alia*, that it "is issued pursuant to the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, in the course and authority of an official investigation." Ex. G, p. 1. The subpoena identifies (in its definition section) two senior citizen "complainants" and commands production of extensive documents from MV PBC (and by definition in the subpoena any of its affiliates, officers, directors, etc.), including documents relating to the HBA. Ex. G, p. 4.

40. On March 22, 2022, five (5) months prior to inception of the Policy, the Florida AG issued a separate Consumer Protection Subpoena Duces Tecum, a copy of which is attached hereto as **Exhibit "H"**.

41. The 2022 Florida Subpoena also stated, *inter alia*, that it "is issued … in the course and authority of an official investigation." Ex. H, p. 1. The 2022 Florida subpoena identifies sixteen (16) additional consumer complainants and commands production of extensive documents from MV PBC. Ex. H, p. 13.

42. Documents provided by MV Realty demonstrate that there were actually approximately forty (40) Claims that were first made prior to inception of the Policy (the "Pre-Policy Claims"), including the Florida AG investigation subpoenas described above; multiple complaints by the Florida Department of Business & Professional Regulation ("DBPR") and the

Better Business Bureau; and administrative and regulatory complaints by states other than Florida; along with demand letters from attorneys on behalf of consumers. Ex. E.

43. At least ten (10) law firms represented MV Realty in responding to approximately thirty-five (35) of the Pre-Policy Claims, including Holland & Knight ("H&K"); Nelson Mullins; Ausley McMullen; Lewis Roca; Carpenter Lipps & Leland; Dykema Gossett; Pashman Stein; Haynsworth Sinkler Boyd; Frascona, Joiner, Goodman and Greenstein; and Hinshaw & Culbertson. Ex. E, No. 1.2, 5.4, 9.2, 10.2, 19.3, 21.2, 22.2, 26.2, 31.2, and 32.2.

44. As reflected in the Summary of Pre-Policy Inception "Claims" (Ex. E), the earliest Claim made arising out of the HBP and HBA was Florida DBPR Complaint No. 2019063900 (the "2019 DBPR Complaint"), which was dated December 23, 2019. Ex. E, No. 1.1.

45. H&K responded to the 2019 DBPR Complaint by letter dated March 11, 2020. Ex. E, No. 1.2.

46. By letter dated March 12, 2020, the DBPR provided "official notice" to Zachman of DBPR Complaint Number 2020013043 (the "2020 DBPR Complaint"). Ex. E, No. 3.1. The letter stated in part, "[t]his letter is to serve as official notice to you in accordance with Section 455.225(1), Florida Statutes, that a complaint has been filed against you and that an investigation has been initiated regarding the allegations made in the attached complaint." Ex. E, No. 3.1.

47. During her deposition, Zachman acknowledged receiving the 2020 DBPR Complaint. *See* Zachman Dep. Tr. dated July 7, 2026, a copy of which is attached hereto as **Exhibit "I"**, at 67:20-68:25.

48. H&K responded to the 2020 DBPR Complaint by letter dated April 1, 2020. Ex. E, No. 3.2.

49. On or about October 19, 2021, an attorney letter was sent on behalf of Mr. and Mrs. Suker to MV PBC (the "Suker Demand") stating, in part:

> We are hereby putting MV Realty PBC, LLC on notice that you have ten (10) days from the date of this letter [October 15, 2021] to release the subject property from the recorded instrument [a Memorandum of MVR Homeowner Benefit Agreement], otherwise, we will have no choice but to initial legal proceedings. …
>
> At this time, Mr. and Mrs. Suker are also in the process of filing a complaint against MV Realty PBC, LLC with the Fraud Against the Elderly Division of the Florida State Attrney's [sic] office. …

Ex. E, No. 12.1 at pp. 3-4.

50. By letter dated November 17, 2021, H&K responded to the Suker Demand. Ex. E, No. 12.2.

51. On or about April 22, 2022, the Acting Attorney General of New Jersey issued an Administrative Action Subpoena Duces Tecum directed to MV Realty of New Jersey, LLC (as well as its officers directors, employees, etc.) to produce documents "in connection with an official investigation conducted by the New Jersey Division of Consumer Affairs, Office of Consumer Protection", and "issued pursuant to the authority of the New Jersey Consumer Fraud Act" (the "NJ AG Subpoena"). Ex. E, No. 26.1 at pp.1-2, 7.

52. On or about May 11, 2022, Pashman Stein Walder Hayden responded to the NJ AG Subpoena. Ex. E, No. 26.2.

53. On that same date (May 11, 2022), Mitchell signed a "Certification of Compliance" stating, in part, that "MV Realty's productions and responses to the Subpoena of the Attorney General of the State of New Jersey, dated April 22, 2022 …, were prepared and assembled under my personal supervision." Ex. E, No. 26.3 at p. 1.

54. On or about May 20, 2022, the Office of the Massachusetts Attorney General issued a Civil Investigative Demand to MV of Massachusetts, LLC stating, in part, that "[t]he AGO is

investigating whether MV Realty's Homeowner Benefit Agreements violate G.L. c. 93A, § 2." Ex. E, No. 30.1 at p.1.

55. On or about June 29, 2022, the Assistant Attorney General, at the Department of Law, Consumer Protection Unit for the State of Georgia, issued an Investigative Demand to MV PBC (c/o H&K), which "pertain[ed] to an investigation being conducted on behalf of the Attorney General, under and by virtue of the authority of the Georgia Fair Business Practices Act…." Ex. E, No. 35.1 at p.1. The Investigative Demand sought, *inter alia*, "a detailed, written description of the Houseowner Benefit Program", as well as a description of "the Company's policies or procedures relating to a consumer's right to terminate, rescind, and/or cancel a Homeowner Benefit Agreement." Ex. E, No. 35.1 at pp. A-5-A-6.

56. On or about August 18, 2022, the Special Deputy Attorney General for the State of North Carolina, Department of Justice, issued a Civil Investigative Demand to MV Realty of North Carolina, seeking the production of documents relating to the HBP. Ex. E, No. 40.1 at pp. 1, 4-7.

**<u>Training and Licensing</u>**

57. In a February 26, 2020 email from Zachman to a homeowner who was complaining about the HBA transaction, Zachman stated that "the listing of your home is MV Realty's business." A copy of the email dated Feb. 26, 2020 at 5:25 PM is attached hereto as **Exhibit "J"**, at p. 5.

58. Manchester testified regarding the extensive training that was required of the real estate agents employed by MV Realty in relation to the HBP. Manchester testified that "the initial training was done by Holland and Knight…." *See* Manchester Dep. Tr. dated July 2, 2026, a copy of which is attached hereto as **Exhibit "K"**, at 24:22-26:16. Manchester also testified that "all the participants in the class [were] licensed real estate agents." Ex. K at 26:19-26:21.

59. Mitchell, as the corporate representative of MV Realty, further testified that "to be a real estate agent, the individual was required to be licensed by whatever state they were working in. *See* MV Realty 30(b)(6) Dep. Tr. dated June 23, 2026, a copy of which is attached hereto as **Exhibit "L"**, at 38:2-38:5. The transcript of Mitchell's individual deposition testimony, dated June 12, 2026, is attached hereto as **Exhibit "M"**. Additionally, "even after being licensed, most states require some form of continuing education to keep the license up-to-date and valid." Ex. L at 38:6-10. As to MV Realty specifically, Mitchell testified that the agents underwent a comprehensive "40-hour training." Ex. L at 32:9-33:8.

60. With respect to the real estate agents employed by MV Realty, comprehensive training was provided in relation to the HBP. *See* MV Realty "New Agent Orientation Overview & Expectations" as to the HBP, a copy of which is attached hereto as **Exhibit "N"**.

DATED this 16th day of July 2026.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for Plaintiff, Markel American Insurance Company*
2 South Biscayne Blvd., Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: */s/ James M. Kaplan*
JAMES M. KAPLAN
Florida Bar No.: 921040
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com
KIMBERLY S. HEIFFERMAN
Florida Bar No.: 055996
kimberly.heifferman@kaplanzeena.com
maria.escobales@kaplanzeena.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of July 2026, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record.

By: */s/ James M. Kaplan*
James M. Kaplan